J-S04012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| FRANCIS JOSEPH CAPITAL, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REGGIE BRAUD, DENISE BRAUD, 319 | : | No. 1696 EDA 2025 |
| BLT INC., AND PATRICIA BROWER | : | |
| AS THE ADMINISTRATRIX OF THE | : | |
| ESTATE OF MARIANNE BROWER, | : | |
| DECEASED | : | |

Appeal from the Order Entered May 30, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  190804856

BEFORE:  LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED AUGUST 12, 2026**

Francis Joseph Capital, Inc. ("FJC"), appeals from the order, entered in the Court of Common Pleas of Philadelphia County, denying its petition for relief from judgment of non pros.[1]  After careful review, we affirm.

The Honorable Joshua Roberts set forth the history of this case as follows:

> This case has a lengthy history dating back to commencement of the action in August 2019.  For the sake of brevity, the court will only summarize the history[] and focus on the orders at issue in these appeals.

---

[1] An order denying a petition to open a judgment of non pros is an interlocutory order immediately appealable as of right under Pa.R.A.P. 311(a)(1).  ***See Bartolomeo v. Marshall***, 69 A.3d 610, 611 n.1 (Pa. Super. 2013).

In the original complaint, [FJC], then represented by counsel, asserted a single claim for unjust enrichment related to an asset purchase agreement. After FJC's original counsel sought and was granted leave to withdraw, new counsel entered its appearance for FJC. FJC's second counsel later sought and was granted leave to withdraw. Thus, as of the entry of the second withdrawal order, in July 2021, FJC was unrepresented. The claimed individual behind FJC, Francis J. Battista, later filed a petition to intervene. This court denied the petition in November 2021, also later denied [] Battista's motion to "substitute" himself as a party.

A third firm then entered its appearance on behalf of FJC in December 2021, and the case proceeded through discovery and toward a trial. But then[,] in March 2022, FJC's third counsel sought and was granted leave to withdraw. [] Battista then improperly filed a "praecipe" to have himself substituted as a party. The Office of Judicial Records accepted the praecipe and added [] Battista as a party, incorrectly.

The case proceeded to a trial before the Honorable Michele D. Hangley, where [] Battista was the only "party" to appear. Apparently, counsel for defendants had disappeared. Even though FJC is a corporate entity and must be represented by counsel in this court, Judge Hangley permitted [] Battista to appear in his individual capacity, based on representations he made at trial. In the absence of any opposing party, Judge Hangley found in favor of [] Battista at trial. Shortly after the conclusion of trial, new counsel entered for the Defendants and filed a petition to vacate the trial judgment. No party filed a response in opposition. Judge Hangley granted the petition and vacated the judgment, as unopposed, on March 30, 2023. [] Battista then appealed the court's order vacating the judgment (1728 EDA 2023). The Superior Court quashed the appeal, as [] Battista failed to timely respond to the Superior Court's show cause order.

Upon remand from the Superior Court, this court restored the case to active status via a scheduling order signed on August 8, 2024, scheduling a new trial to take place on January 8, 2025. [] Battista appealed the scheduling order [at docket number] 2437 EDA 2024[.] In this court's [Pa.R.A.P.] 1925(b) order pertaining to that appeal, this court noted that there had never been a proper substitution by [] Battista, and he was a non-attorney filing on behalf of FJC, a corporate entity. [] Battista attempted to cure this issue by filing a motion to "correct the record." [] Battista also filed several additional motions purportedly on behalf of FJC.

- 2 -

This court, sua sponte[,] on November 25, 2024, struck the "substitution" that [] Battista had filed substituting himself as the plaintiff, and barred [] Battista from filing legal papers on behalf of FJC. [] Battista appealed this court's order of November 25, 2024 [at docket number] 11 EDA 2025[. On December 13, 2024, the Superior Court quashed Battista's appeal at docket number 2437 EDA 2024 as interlocutory.] On April 15, 2025, the Superior Court dismissed the appeal [at 11 ED 2025] due to appellant's failure to comply with the docketing statement requirements of Pa.R.A.P. 3517.

In the meantime, on January 3, 2025, [] Battista filed an emergency motion to stay the trial scheduled for January 8, 2025. [] Battista cited[,] inter alia[,] the pending appeal of the order striking the substitution [at docket number] 11 EDA 2025[,] and a pending federal court criminal indictment against him. This court denied the emergency motion on January 7, 2025, noting again that [] Battista was not a proper party and was barred from filing on behalf of FJC. [On January 6, 2025, Battista also filed with the Superior Court an emergency application to stay the January 8, 2025 trial pending appeal of the November 25, 2024 order striking Battista's substitution as a party and precluding him from filing legal papers on behalf of FJC. In his application, Battista alleged that the trial court lacked jurisdiction to enter that order pursuant to Pa.R.A.P. 1701(a), as his appeal of the scheduling order was then pending. On January 7, 2025, the Superior Court denied Battista's application.]

Battista immediately filed an appeal [of the trial court's order denying an emergency stay] to the Superior Court [at docket number] 149 EDA 2025[] and an emergency application to the Pennsylvania Supreme Court [at docket number] 5 EM 2025[.] The Supreme Court dismissed the emergency application as moot on January 13, 2025. On April 15, 2025, the Superior Court dismissed the appeal [at docket number 149 EDA 2025] due to appellant's failure to comply, again, with [Rule] 3517.

On January 8, 2025, the case proceeded to a non-jury trial before the Honorable Vincent I. Johnson. [] Battista sent his wife to the trial in his place. Defendants and defense counsel appeared. [By order docketed January 13, 2025,] Judge Johnson dismissed the

action without prejudice[2] due to FJC's failure to prosecute. Judge Johnson specifically cited this court's order of November 25, 2024, which prohibited [] Battista from filing any papers on behalf of FJC.

On January 15, 2025, new counsel entered their appearance on behalf of FJC only and[, on January 20, 2025,] filed a petition to open [the judgment of] non pros. Judge Johnson denied the motion on May 30, 2025. On June 27, 2025, the same counsel entered their appearance on behalf of [] Battista [and filed a notice of appeal from the May 30, 2025 order on behalf of FJC].

Trial Court Opinion, 9/24/25, at 2-5 (unnecessary capitalization omitted; some formatting altered).

On April 20, 2026, this Court remanded the case to the trial court for the preparation of a supplemental opinion addressing, in detail, its reasons for denying FJC's petition to open the judgment of non pros. The trial court issued its opinion on May 18, 2026. Thereafter, FJC filed an application for relief, seeking to file a supplemental brief in response to the trial court's opinion. This Court granted FJC's application and provided Appellees 20 days within which to file a responsive supplemental brief. Appellees did not do so and this matter is now ripe for disposition.

FJC raises the following claims for our review:

_____

[2] We note that "[Pa.R.C.P. 3051, governing relief from judgments of non pros,] makes no distinction between judgments of non pros entered with or without prejudice. The Rule's mandatory phrasings that relief from a non pros 'shall be sought by petition' and 'must be asserted in a single petition' clearly connote a *requirement* that parties file a petition with the trial court in the first instance. The comment indicates [the Rule] . . . applies to all judgments of non pros." **Krell v. Silver**, 817 A.2d 1097, 1100 (Pa. Super. 2003), quoting **Sahutsky v. H.H. Knoebel Sons**, 782 A.2d 996, 999 (Pa. 2001) (emphasis in original).

1. Did the trial court abuse its discretion and err in entering an order that denied [FJC's] petition for relief from the judgment of non pros [] where the petition demonstrated that it was timely, there was a reasonable explanation or legitimate excuse for the failure to appear, and there was a meritorious underlying cause of action?

2. Did the trial court abuse its discretion and err in entering an order that denied the petition without finding that the defendant suffered actual prejudice?

Brief of Appellant, at 4 (unnecessary capitalization omitted).

"A request to open a judgment of non pros . . . is in the nature of an appeal to the equitable powers of the court[.]" **Bartolomeo**, 69 A.3d at 613. Thus, we review a trial court's decision refusing to open a judgment of non pros for an abuse of discretion and will reverse only if the decision "reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." **Womer v. Hilliker**, 908 A.2d 269, 279 (Pa. 2006).

Pennsylvania's Rules of Civil Procedure provides that a trial court may enter a judgment of non pros "on [its] own motion" "if without satisfactory excuse a plaintiff is not ready" when the case is called for trial. Pa.R.C.P. 218(a). "A party who fails to appear for trial shall be deemed to be not ready without satisfactory excuse." Pa.R.Civ.P. 218(c).

Pennsylvania Rule of Civil Procedure 3051 governs relief for a judgment of non pros and permits a party to file a petition to open the judgment by alleging "facts showing that (1) the petition is timely filed, (2) there is a reasonable explanation or legitimate excuse for the conduct that gave rise to the entry of judgment of non pros, and (3) there is a meritorious cause of

action." Pa.R.C.P. 3051(b). "[T]he court is required to balance the equities and to deny the petition[,] even where all elements coalesce[,] if the granting of relief would cause undue hardship or prejudice to the opponents." *Jung v. St. Paul's Par.*, 560 A.2d 1356, 1358 (Pa. 1989) (citations omitted).

In evaluating a party's explanation for failing to appear, a court should consider the following factors:

> 1) whether the failure to appear was inadvertent; 2) whether counsel's failure to appear was part of a pattern of improper behavior, misconduct or abuse; 3) whether the court attempted to contact counsel prior to dismissing the case; 4) whether the opposing party would be prejudiced by the delay; and 5) whether the court gave any consideration to lesser sanctions.

*Faison v. Turner*, 858 A.2d 1244, 1246-47 (Pa. Super. 2004) (citation omitted).

Here, FJC argues that it satisfied all three elements of Rule 3051 and that Appellees failed to demonstrate actual prejudice. First, FJC notes that it filed its petition to open within 10 days after the entry of judgment non pros.[3]

Next, FJC argues that it had a "reasonable explanation or legitimate excuse" for its failure to appear and satisfied all of the factors the court is

_____

[3] We note that FJC incorrectly cites to Pa.R.C.P. 237.3, which provides that "[i]f the petition is filed within ten days after the entry of a judgment of non pros on the docket, the court shall open the judgment if the proposed complaint states a meritorious cause of action." Pa.R.C.P. 237.3(b)(1). Rule 237.3 applies to judgments of non pros for failure to file a complaint pursuant to Pa.R.C.P. 237.1. Here, judgment of non pros was entered pursuant to Rule 218, which permits a court, on its own motion, to enter a judgment of non pros where, as here, a plaintiff fails to appear for trial without satisfactory excuse. Nevertheless, Appellees do not argue that FJC's petition to open was not timely filed.

required to consider in evaluating a party's excuse for failing to appear. Brief of Appellant, at 17. *See Faison*, *supra*. With regard to the first factor, whether the failure to appear was inadvertent, FJC claims that its failure to appear "was not done deliberately or intentionally" because, prior to the entry of Judge Roberts' November 25, 2024 order striking Battista as a party, there was no need for counsel. Brief of Appellant, at 18. Once Battista was stricken as a party, FJC's president, Crystal Battista, "contacted several law firms seeking representation, but no counsel was willing to litigate the case on such short notice." *Id.* at 19. FJC also argues that Battista requested an emergency stay of trial on January 3, 2025, and, when the trial court denied the motion, immediately appealed the order. Moreover, on January 7, 2025, Battista attempted to file a notice of bankruptcy under Chapter 11. *Id.* "FJC trusted that the pending appeals and notice of bankruptcy would have necessitated a stay of the proceedings." *Id.*

As to the second factor—whether the failure to appear was part of a pattern of improper behavior—FJC argues that it "consistently demonstrated diligence and steadfast commitment to prosecuting its claims" and that its absence "resulted from extenuating circumstances related to time constraints in securing trial counsel, not from any willful misconduct." *Id.* at 20.

Next, as to the prejudice factor,[4] FJC claims that the Appellees "could not plausibly contend that they would be unable to present their case should the judgment of non pros be opened." *Id.* at 21. FJC asserts that Appellees' basis for their claim of prejudice—the cost of litigating—is "not a proper claim of prejudice." *Id.* Finally, FJC argues that Appellees previously sought, and received, the same relief after failing to appear for the October 2022 trial. Thus, "[t]hey cannot reasonably assert that their rights would be prejudiced if FJC is afforded the same relief." *Id.* at 22.

Lastly, FJC argues that lesser sanctions could have been imposed and the entry of judgment of non pros was "disproportionate to the circumstances and an abuse of discretion." *Id.* at 23.

With regard to the third prong of Rule 3051(b), whether there is a meritorious cause of action, FJC claims that the requisite merit is "clearly established by the specific allegations set forth in its complaint, as well as by the court's denial of Appellees' preliminary objections, which confirmed that, if proven, FJC's claims would entitle it to relief." *Id.* at 23 (unnecessary capitalization omitted). FJC also notes that the trial court previously entered judgment in its favor following the October 2022 trial at which Appellees failed to appear. *Id.* at 24.

_____

[4] The third factor—whether the court attempted to contact counsel prior to dismissing the case—is not relevant here, as FJC was not represented by counsel at the time.

In response, Appellees argue that FJC failed to establish a reasonable explanation or legitimate excuse for its failure to appear at trial. Appellees cite Battista's history of improper filings and frivolous motions, as well as numerous appeals to this Court that were all quashed or otherwise dismissed for failure to comply with procedural rules. *See* Brief of Appellee, at 8. Appellees claim FJC had ample notice of the trial date and the fact that it was required to be represented by counsel but, "instead of taking corrective action," Battista "engaged in a campaign of frivolous motions that launched personal attacks upon judges and lawyers." *Id.* at 9. Appellees assert that FJC "never filed bankruptcy, so its allegations regarding the automatic stay are irrelevant." *Id.* at 10.

Appellees further claim that they will be prejudiced if the judgment of non pros is opened because they will suffer "substantial financial prejudice." *Id.* at 11. Moreover, Appellees argue that Battista "is currently incarcerated and is unlikely to leave prison for years" and his incarceration "renders it extremely difficult to conduct relevant discovery and present factual information at trial." *Id.* *See also* Memorandum of Law in Support of Defendants' Response to Plaintiff's Petition to Open Judgment of Non Pros, 2/10/25, at 2, citing ***U.S.A. v. Battista***, No. 2:22-CR-00192-PD.

In denying Battista's petition to open, the trial court addressed the "reasonable excuse" prong of Rule 3051(b) as follows:

> Here, [FJC] does not have a reasonable explanation for its failure to appear at trial. [] Francis Battista and Crystal Battista cannot represent FJC because they are not attorneys or parties to the

- 9 -

matter. FJC is a Pennsylvania corporation. Under Pennsylvania law, corporations must have attorneys to represent [them] in court. ***See Barrett***[ ***v. M&B Medical Billing, Inc.***, 291 A.3d 371, 376 (Pa. Super. 2022)]. Further, Mr. Battista's attempts to name himself as plaintiff in the matter were denied. Therefore, Mr. Battista could not appear pro se at trial.

[] Battista's failure to obtain counsel and appear at trial was not inadvertent. Since December of 2021, Mr. Battista knew that he could not represent FJC or himself in this case. Mr. Battista filed numerous pro se motions on behalf of FJC and those motions were denied. Judge Roberts specified in his December 3, 2021 order that Mr. Battista is not a party in this matter. Despite these Orders, Mr. Battista continued to file pro se motions on FJC's behalf and represented FJC in a trial where Defendants were not present. [Again, on November 25, 2024], Judge Roberts issued an order barring Mr. Battista from filing any more legal papers on behalf of FJC and striking him as a party to this matter. Thereafter, the parties were notified that trial would commence on January 8, 2025. Thus, Mr. Battista was given at least one month to find counsel prior to trial and failed to do so. Mr. Battista filed pro se motions and appeals to [the] Superior Court in hopes of delaying the trial. One month was enough time for Mr. Battista to acquire counsel because he hired counsel two days after the court's findings were docketed. Further, Mr. Battista already had counsel for his criminal matter that was happening later on the same day [as the trial in this matter]. Thus, Mr. Battista's actions of filing pro se motions to delay trial, hiring counsel after the matter was dismissed, and sending his wife to represent FJC at the hearing shows he was aware of the trial and his failure to appear was purposeful.

Trial Court Opinion, 5/18/26, at 5-6 (citations to record and unnecessary capitalization omitted).

Upon review, we can discern no abuse of discretion on the part of the trial court. ***Womer***, ***supra***. Battista was aware,[5] as of November 25, 2024—

_____

[5] In its supplemental brief, FJC argues that, "[r]ather than focusing on whether FJC established a legitimate excuse for its inability to proceed through counsel, *(Footnote Continued Next Page)*

44 days prior to the January 8, 2025 trial—that he was not permitted to represent FJC as a pro se litigant and, thus, was required to retain counsel.[6] Despite this fact, Battista persisted in filing unauthorized pro se motions with the court. **See** Motion for Recusal of Judge Roberts, 1/3/25; Emergency Motion to Stay Trial, 1/3/25. Moreover, Battista's assertion that he did not have sufficient time to retain counsel rings hollow where new counsel entered their appearance on January 15, 2025, a mere two days after the judgment of non pros was entered on the docket. Finally, this Court has held that "[a]ny long delay in prosecuting a case 'is presumptively prejudicial to all parties even without a specific showing of prejudice on the record.'" **Abraham Zion Corp. v. After Six, Inc.**, 607 A.2d 1105, 1107 (Pa. Super. 1992) (citation

_____

the [trial court's] supplemental opinion repeatedly frames the issue in terms of [] Battista's conduct." Supplemental Brief of Appellant, at 4. However, "[a] corporation is a creature of legal fiction, which can act or 'speak' only through its officers, directors, or other agents." **Petrina v. Allied Glove Corp.**, 46 A.3d 795, 799 (Pa. Super. 2012) (citations omitted). "Where a representative for a corporation acts within the scope of his or her employment or agency, the representative and the corporation are one and the same entity, and the acts performed are binding on the corporate principal." **Id.** (citations omitted). Thus, Battista's acts—and failures to act—are attributable to FJC, as Battista has consistently held himself out to be FJC's corporate representative and/or assignee throughout the course of this litigation.

[6] We acknowledge that Judge Hangley, based solely on Battista's unsubstantiated representations made in open court when Appellees were not present to object, had previously authorized him to proceed pro se as a party. However, after orally stating on the record that she would allow Battista to be substituted as a party, Judge Hangley nevertheless directed Battista to "follow[ ]up on paper," i.e., file a proper motion with the court. N.T. Hearing, 10/17/22, at 11. Battista never did so.

omitted).    Here, as Appellees note, Battista's current incarceration[7] substantially impedes Appellees' ability to proceed with their preparations to defend this case and obtain finality.  Thus, as Battista has failed to provide a "reasonable explanation or legitimate excuse for the conduct that gave rise to the entry of judgment of non pros," the trial court properly denied his petition to open.  *See* Pa.R.C.P. 3051(b); ***Faison***, ***supra***.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/12/2026

---

[7] On January 31, 2025, Battista was convicted in federal court of 12 counts of wire fraud, three counts of aggravated identity theft, and seven counts of money laundering.  He was immediately remanded into custody and faced a maximum possible sentence of 316 years in prison.  ***See*** https://www.justice.gov/usao-edpa/pr/delaware-county-man-convicted-trial-defrauding-pandemic-relief-programs-84-million (last visited 6/2/26).

- 12 -